IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AVAGO TECHNOLOGIES FIBER IP
(SINGAPORE) PTE. LTD.,

     Plaintiff,

v.                                                              11-MC-00030 RB/ACT

IPTRONICS, INC. and IPTRONICS A/S

     Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Avago Technologies Motion to Compel Production From Emcore Corporation [Doc. 31]. The matter has been fully briefed and the Court held a hearing on February 17, 2011. For the reasons set forth below, the Motion is granted in part and denied in part.

This case is ongoing in the United States District Court for the Northern District of California, Cause No. 10cv02863 EJD between Avago Technologies Fiber IP (Singapore ) PTE LTD. (Avago) and IPtronics, Inc. and IPtronics A/S (IPtronics), in which Avago alleges patent infringement on two patents. IPtronics counterclaimed for declaratory judgment of invalidity and noninfringement of both patents. The action in this Court involves a subpoena duces tecum served on non-party Emcore Corporation (Emcore) by Avago pursuant to Fed.R.Civ.P. 45. Emcore objected to much of the production and Avago moved to compel. The parties conferred in an attempt to resolve the objections before and after filing the motion, but were unable to resolve all of the objections.

In an effort to identify and narrow the nature of the discovery dispute, the Court's Notice of Hearing and Order [Doc. 44], requested supplemental briefing on, *inter alia*, the specific document

requests from Emcore that were still in dispute; the relevance of the documents to Avago's claims in the underlying litigation; whether Emcore has control over the documents requested; and Emcore's specific objections to the discovery sought.  Avago and Emcore were also requested to submit a form of Protective Order to the Court.[1]  All of these matters were discussed at the February 17 hearing.

The supplemental briefing and the parties' arguments at the hearing greatly assisted the Court in narrowing the remaining issues in this discovery dispute.  This opinion discusses what was decided at the hearing and the matters taken under advisement.

**Category 1**:  Technical documents such as bills of materials or other technical documents, including data sheets, drawings, schematics and specifications, that provide  the following information about Emcore products that incorporate IPtronics components: (a) documents that identify the components (*e.g.*, the VCSEL array and laser driver) included in the Emcore products, (b) documents that describe these components (*e.g.*, VCSEL manufacturer, VCSEL aperture), © the design of the Emcore products (*e.g.*, the location of the microcontroller, if any, (d) how and where the Emcore products are assembled, (e) how the waveform parameters for the products are determined, (f) how the products are programmed and tested to deliver a current having a desired waveform (*i.e.* electrical output), (g) what parameters are programmed to obtain the desired waveforms, (h) documents that show the electrical waveform of the Emcore products when operated and programmed with the parameters used to obtain the desired waveforms, and (i) documents that show where the waveform parameters of the Emcore products are stored, and the location of the storage device relative to the laser driver.

As to sub-parts a, c, d, i, and a portion of b, Emcore has these documents under its control and will produce them subject to the protective order to be entered by the Court in this matter.

As to sub-parts e, f, g, and h, Emcore states it has no documents; Avago disputes this.  The Court has asked counsel to check with Emcore again and Emcore is directed to submit a declaration confirming there are no other documents responsive to this request.

---

[1]  The Court's Order referred to a "Confidentiality Order," but based on the parties' submissions it will now be referred to a "Protective Order."

With regard to 'bills of material," Avago will first review what Emcore produces and if it is not satisfied, it may request additional information.  If Emcore will not provide the additional requested documents, Avago may file a supplemental motion to compel.

**Category 2** -  Quotes provided by Emcore to its customers and potential customers for Emcore products that incorporate IPtronics components.

Emcore has agreed to produce a summary chart showing sales, but objects to producing a list or other identification of its customers.  Avago says it needs this information to prove its damages using hypothetical negotiations under patent law.  The Court has given Emcore the option of stipulating that the product was used by at least one of its customers for its intended use.  This is the approach taken in *Whirlpool Corp. v. LG Electronics, Inc.*, an unpublished decision from the Western District of Michigan, Southern Division, Case No. 1:04-cv100.[2]

If Emcore does not so stipulate, Avago will depose an Emcore representative and then, if Avago still needs more information, Avago may file a supplemental motion to compel.

**Category 3** - A summary report with customer names and sales information (including units and price per unit) for Emcore's sales to its customers of Emcore products that incorporate IPtronics components.

Emcore will  provide the documents it has already agreed to produce  and a quarterly summary of the quotes and sales.  The Court will not require Emcore to disclose customer names at this time.

---

[2]  In *Whirlpool*, the Defendant ultimately refused to stipulate and the Court ordered production of Defendant's customer information.  The Court noted that "[t]he movant must make a 'particularized showing' that the information is confidential and must come forward with 'specific examples' of competitive harm.  *See Waelde v. Merck, Sharpe & Dohme*, 94 F.R.D. 27, 28 (E.D. Mich. 1981).  Beyond claiming that its customer lists are confidential and that unsupervised contact with their customers could be harmful to their business interests, defendants have not adduced anything specific in support of their buden.  Although the court recognizes that customer lists have a certain confidential aspect, that confidentiality is attenuated in the present case." *Whirlpool* at 1-2.

**Category 4** -  Documents that discuss competition between Avago U.S. and Emcore or business won by Emcore that used to go to Avago U.S. regarding Emcore products incorporating IPtronics components.

Emcore says it has documents that discuss competition between Emcore and Avago U.S. because they compete on many different fronts, but it does not have documents that discuss business won by Emcore that used to go to Avago regarding active optical cables that include IPtronics components.   Emcore is to produce documents which discuss competition between Emcore and Avagao U.S. regarding products which incorporate IPtronics components.   Counsel for Emcore is to check again with Emcore to determine if Emcore has located any documents which discuss business won by Emcore that used to go to Avago U.S. regarding products that incorporate IPtronic components.   If  Emcore has the documents requested in Category 4, those documents will be produced subject to the protective order to be entered in this matter.

**Category 5** -  All documents, whether authored by Emcore or received by Emcore from its customers who purchased or were offered Emcore products incorporating IPtronics components, which discuss the advantages or desirability/importance of having any of the features covered by ATF's asserted patents (*e.g.*, pre-emphasis, temperature compensation, high speed (Gb/sec), or low bit error ration).

The Court took this request under advisement following the hearing.  Emcore objects that these documents are highly sensitive and are generated internally for Emcore's use.  Moreover, Emcore argues, discovery from a non-party is not unlimited and Avago must show a greater need for the information than it would from a party.  Emcore also argues that Avago can have expert witnesses discuss the patent and technology issues.

Avago asserts that the documents are necessary with regard to damages and to Avago's ability to defend itself against IPtronics counterclaim, which asserts that Avago's patents are invalid because they are "obvious." The determination of invalidity encompasses items such as desirability,

advantages of the patent, etc.  These factors, Avago argues, could be gleaned from the documents requested.

The parties asked the Court to examine the factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971) and the holding in *Micro Motion, Inc. v. Kane Steel Co., Inc.*,  to determine whether the requested documents should be produced.

The *Georgia-Pacific* case posited a hypothetical negotiation between a willing buyer and willing seller to determine the amount of damages in the form of a reasonable royalty.  318 F. Supp. at 1120. The court identified 15 factors germane to this calculus.  Those factors include: the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty; the established profitability of the product made under the patent, its commercial success, and its current popularity;  the utility and advantages of the patent property; the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; and the opinion testimony of qualified experts.  *Id.* (factors 1, 8, 9, 12 and 14 out of 15).

Another court has stated that  "[a] reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)."  *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed.Cir. 2010).

The *Micro Motion* case concerned discovery of confidential customer lists from a non-party for use in the underlying litigation to establish *lost profits*.[3]  The court held plaintiff could not obtain the confidential information because the non-party had not been shown to be an infringer and therefore the information sought was not relevant.  894 F.2d at 1326-27.  The *Micro Motion* decision discussed differing theories of damages and how the documents sought may or may not be relevant depending on the theory pursued.

By way of contrast, in *American Metal Prod. Co. v. Gutter Topper, Ltd.*, 1997 WL 666291 (S.D.N.Y. 1997) (unpublished decision), the court declined to order production of a non-party's analyses of competitors' productions, customer surveys, price lists, and the like because the plaintiff did not make clear what damage theory it was pursuing and noted:

> The *Micro Motion* court strongly suggested that courts should be reluctant to grant discovery of competitive information to plaintiffs as a matter of course in patent cases, lest the practice lead to abuse. Moreover, the *Micro Motion* court held out the possibility that the issue could have been referred to the trial court where the case was pending, recognizing that the court was "[u]nquestionably . . . in the best position" to determine the viability of damage theories and the propriety of compelling a non-party to disclose information relevant to those theories.

1997 WL 666291, *1 (quoting *Micro Motion*, 894 F.2d at 1324-25).  The *American Metal Prod.* court held that the district court which would try the underlying litigation was in the best position to know what discovery was relevant.  1997 WL 666291, *1-2.

The parties do not dispute the confidential nature of the information being requested by Avago.  "Confidential commercial information warrants special protection under Rule 26(c)(7)."

---

[3]  It appears that Avago and Emcore agree that Avago is currently seeking only a reasonable royalty claim.  (There may be a lost profit claim with another entity if the California district court allows Avago to amend its complaint, but the documents sought here are only to establish the reasonable royalty.)

*Micro Motion*, 894 F.2d at 1324.  As noted above, the Court is reluctant to require Emcore to produce a customer list or detailed information regarding sales, or offers for sale.  However, the Court will require Emcore to produce the documents requested that were authored by Emcore's customers who purchased or were offered Emcore products incorporating IPtronics components, with customer information redacted.  Since neither Emcore nor any of its customers has yet to be determined to be an infringer, Emcore need not produce its internal documents at this time.

**Category 6** - Documents sufficient to show that, and to what extent, Emcore's products incorporating IPtronics components are made, offered for sale, sold, imported or used in the United States.

At the hearing Emcore stated that none of its products incorporating IPtronics components are made in the United States.  However, Emcore will produce a summary of its sales, subject to the protective order to be entered in this matter

**Protective Order**.

The parties have agreed for some time that a Protective Order entered by this Court would be appropriate.  The parties have not been able to agree on the form of a Protective Order and in particular, whether it should include a release of liability provision and parenthetical information regarding VCSELs in  Section 8 (the Prosecution Bar).

The Court's Order requesting supplemental briefing and scheduling the February 17, 2012 hearing, ordered the parties to submit a Protective Order that did not include a release of liability provision and, if they could not agree on the form of the order, each party was to submit a proposed draft. *See* Doc. 44.  The parties submitted separate proposed Protective Orders because they could not agree on the issue of whether the provision in the Stipulated Protective Orders entered by the Court in the underlying case in the Northern District of California (regarding the prosecution bar in

Section 9), should be modified. *See* Doc. 48 & Exhibit 48-2 (Avago's proposed Protective Order) and Exhibit 48-3 (Emcore's proposed Protective Order).

At the hearing, the parties agreed that this Court could enter a Protective Order identical to the one entered in the California case, and if the Prosecution Bar provision in the Protective Order in the underlying case is modified, they will agree to the same modification in the Protective Order in this matter. Subsequently, the parties submitted a written stipulation to that effect [Doc. 52]. Accordingly, the Court will enter Emcore's form of Protective Order ( a form of which is at Doc. 48-3) and the stipulated Order re Prosecution Bar [ a form of which is at Doc. 52]. In addition, the Court will enter the parties' stipulated Confidentiality Order which governs the Protective Order, a form of which is at Doc. 48-1. The three orders, in their final form, will be appended to this Memorandum Opinion and Order.

Finally, as the Court advised counsel at the hearing, Emcore is to begin production of documents to Avago immediately upon entry of the Protective Order and that production is to be completed within thirty (30) days of the hearing (by March 16, 2012) because the Court in the California case has scheduled a claim construction hearing for April 3, 2012.

Appended to this MOO are three documents agreed to by the parties and entered by this Court: (1) Confidentiality Order; (2) Protective Order (Exhibit 1 to the Confidentiality Order); and (3) Stipulated Order re Prosecution Bar.

IT IS THEREFORE ORDERED that Avago Technologies Motion to Compel Production From Emcore Corporation [Doc. 31] is granted in part and denied in part as stated herein, and Emcore is to provide documents as ordered on or before March 16, 2012.

_____
Alan C. Torgerson
United States Magistrate Judge